In the Matter of RANDOLPH M. NEWMAN, an Attorney, Respondent.

First Department, February 6, 1925.

Attorney and client — disciplinary proceedings — attorney received from prospective tenant of his client rent in advance for use of cottage belonging to client — attorney agreed to return money if litigation pending deprived tenant of premises — tenant did not get possession but attorney refused to return money — judgment in conversion was recovered against attorney by tenant — attorney disbarred.

Attorney at law disbarred for the conversion of money, since it appears that he received the money in question from a prospective tenant of a client, which money represented the total rent that the tenant was to pay for a cottage; that the attorney made an agreement with the prospective tenant that the money would be paid to the attorney's client at the monthly rate of the rental, and that in case litigation then pending should deprive the tenant of the possession of the premises, the attorney would return the money to him; that the tenant did not get possession of the premises and the attorney refused to return the money advanced as rent, and that thereafter the tenant secured a judgment in an action of conversion against the attorney.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

*Charles L. Kahn*, for the respondent.

CLARKE, P. J.:

The respondent was admitted to practice as an attorney and counselor at law in the State of New York at the July, 1900, term of the Appellate Division, First Department, and has practiced as such attorney since his admission.

The petition charges that the respondent has been guilty of misconduct as an attorney at law as follows:

" In April, 1917, the respondent acted as attorney for one Gardner, who claimed to be the owner of a cottage located at

Rye, Westchester County, N. Y. While acting as attorney for Gardner, the respondent discussed with one Roth a proposed lease of the cottage for the summer months of 1917. Roth finally agreed to lease the cottage and to pay in advance a total rent of $700 for the season. Before Roth executed a lease he discovered that there was litigation pending involving Gardner's title to the property and that one Magill had brought an action to eject Gardner from the premises. Roth then refused to execute a lease unless he was furnished with some security to protect him in the event that he paid the rent in advance and was subsequently deprived of possession. The respondent then stated to Roth that his client Gardner was out of town and he was, therefore, unable to procure a bond but that if Roth would give the entire rent, amounting to $700 to the respondent, he would agree to hold the same as agent for Roth and to pay Gardner $175 at once and $175 monthly thereafter so long as Roth's possession was not disturbed. In accordance with this arrangement, Roth gave to the respondent the sum of $700 on April 28, 1917, and the respondent then delivered to Roth a letter signed by him in which he stated as follows:

" ' Owing to the fact that there is certain litigation now pending between Urwin J. Magill and Harold D. Gardner, which litigation is in the form of an action in the Supreme Court and certain phases thereof are now on appeal to the Appellate Division, I beg to state that in order to protect your possession thereof so that the same will not be disturbed by reason of this litigation, that the $700 which you are turning over to me is to be paid out by me as follows: $175 a month to Mr. Gardner, the first month to be paid now, and in addition thereto the brokerage for renting said premises to be paid out of said fund as well as such moneys as may be necessary to place the house in condition, the balance thereof to be held in my possession and to be paid by me $175 a month to Gardner as long as your possession is not disturbed by reason of the above litigation.

" ' This letter shall be read and construed in conjunction with the lease dated the 28th day of April, 1917, for the premises in question, and the covenant to pay the rent of $700 in advance is to be modified to the extent of providing that said $700 shall be paid only by the said Phineas Roth in installments in the manner aforesaid, and I do hereby acknowledge that I have received said $700 and that I hold the same as agent for said Phineas Roth for the purposes aforesaid.'

" When Roth tried to enter the premises at Rye he found that the same were occupied by Magill, the person who questioned Gardner's title, and Roth did not obtain possession of the cottage

First Department, February, 1925. [Vol. 211

at any time during the summer season of 1917. When Roth learned that it would be impossible for him to occupy the leased premises he demanded of the respondent that the money which he had deposited as aforesaid be returned to him. The respondent has failed to return any part of the moneys.

" After the respondent had failed and refused to return the moneys deposited Roth caused an action to be brought against the respondent in the Municipal Court of the City of New York in which he charged that the respondent had converted the moneys deposited with him pursuant to the terms of the letter above set forth to his own use. The respondent filed an answer to the charges then made against him containing, among other defenses, a general denial, and after a trial the Court found and decided that Roth was entitled to recover damages against the respondent in the sum of $478 and costs, and that the respondent was liable to arrest and imprisonment on execution against his person and a judgment in accordance with said decision was thereafter duly entered. Upon appeal by the respondent to the Appellate Term of the Supreme Court this judgment was affirmed. Motion thereafter made at the Appellate Term and at the Appellate Division of the Supreme Court for leave to appeal to the Appellate Division was subsequently denied. An execution was thereupon issued and the respondent having failed to pay the judgment, he was arrested by one of the marshals of the City of New York. Immediately upon his arrest the respondent gave a jail liberty bond and was released. He has not paid any part of the judgment and has converted to his own use the sum of $478 of the moneys received by him from Roth for the purpose of paying the rent of the cottage at Rye as above set forth."

The learned official referee has reported the facts as follows: " The respondent was the attorney for one Gardner who claims to be the owner of a house at Rye. The record title was not in Gardner; Gardner had a contract to purchase on the installment plan, he defaulted in the payment of one installment. Magill, the record owner, brought an action of ejectment against Gardner, which in the early part of June had not been tried. Gardner was desirous of leasing the house to one Roth for the summer months from June 1, 1917, to October and Roth agreed to take the house. A lease dated April twenty-eighth was entered into between Gardner and Roth. The term was to begin June 1, and to end October 1, 1917. The lease permitted Roth to take possession any time before June first. Under the terms of the lease the entire rent of $700 was to be paid in advance. The respondent advised Mr. Roth, the proposed tenant, that the ejectment suit could not

be tried or disposed of before the term of the lease would expire, and, therefore, Roth was safe in paying the $700 in advance. Roth, however, was unwilling to pay the $700 under the circumstances, and for his protection instead of paying the $700 to Gardner, the landlord, deposited the $700 with the respondent upon the terms set forth in the following letter:      " ' NEW YORK, *April* 28, 1917.

" ' Mr. PHINEAS ROTH,
     " ' 535 West 135th Street,
               " ' New York City:

" ' DEAR SIR.— In consideration of your renting the premises of Harold D. Gardner, at Rye, New York, and for which you are to pay $700 cash for the summer season of 1917, and owing to the fact that there is certain litigation now pending between Urwin J. Magill and Harold D. Gardner, which litigation is in the form of an action in the Supreme Court, and certain phases thereof are now on appeal to the Appellate Division, I beg to state that in order to protect your possession thereof, so that the same will not be disturbed by reason of this litigation, that the $700 which you are turning over to me is to be paid out by me as follows:

" ' One hundred and seventy five dollars ($175) a month to Mr. Gardner, the first month to be paid now and in addition thereto, the brokerage for renting said premises to be paid out of said fund as well as such moneys as may be necessary to place the house in condition, the balance thereof to be held in my possession and to be paid by me $175 a month to Gardner as long as your possession is not disturbed by reason of the above litigation.

" ' It is, however, understood, that if, in the meantime Mr. Gardner should furnish you with an undertaking or other security satisfactory to you, by which you will be protected from any disturbance in possession, by reason of such litigation, then the fund in my possession shall be then turned over in toto to Mr. Gardner.

" ' This letter shall be read and construed in conjunction with the lease dated the 28th day of April, 1917, for the premises in question, and the covenant to pay the rent of $700 in advance is to be modified to the extent of providing that said $700 shall be paid only by the said Phineas Roth in installments in the manner aforesaid, and I hereby acknowledge that I have received said $700 and that I hold the same as agent for said Phineas Roth for the purposes aforesaid.          R. M. NEWMAN.' "

When Roth, the tenant, attempted to move into the house in May, 1917, he found that Magill, the plaintiff in the ejectment

42

suit, had taken possession of the house and was in actual possession; whereupon Roth's lawyer in behalf of Roth requested the respondent to return the $700. Respondent refused to return the $700 and stated that he had made a motion in the Supreme Court to oust Magill, which the respondent believed would be granted. This motion was denied, Magill remained in possession and Roth was unable to and did not get possession of the house; and after the motion to oust Magill was denied Roth's attorney demanded a return of the money. Respondent refused to return it.

Respondent made offers to return both verbally and by letter; but in the light of subsequent facts as they appear from the record I do not think those offers were made in good faith. The record shows that no actual tender of the money was made.

Respondent has never offered to return the entire $700. He offered to repay a certain portion thereof, upon condition that a general release was given him. The general release was refused unless the respondent gave evidence that the part of the money claimed to have been disbursed by him was actually disbursed in accordance with the terms of the agreement under which it was deposited with respondent. This respondent failed to do.

Roth finally agreed to accept the balance of the $700, giving the respondent credit for the payments he claimed to have made. The respondent promised to pay this sum but has failed to do so. Roth brought an action in the Municipal Court to recover back the $700. Judgment was entered in favor of plaintiff for the sum of $478, giving the respondent credit for the sums he claimed to have paid out in accordance with the terms of his letter above set forth. An appeal from the judgment was taken and the judgment affirmed. Permission to further appeal was denied. Execution was issued against the property of the respondent and returned unsatisfied. A body execution was issued and the respondent was admitted, on giving a bond, to jail limits. Respondent never paid or offered to pay the money into court nor did he make any effort to interplead. The defense of the respondent is as follows:

" The respondent admits the receipt of the money and practically all the facts above found, except he denies bad faith. *First.* He claims he was always ready to pay over the money but was unable to ascertain to whom to pay it; that if he paid to the party not legally entitled to it he might be required to pay it over again.

" *Second.* The respondent acted as agent and not attorney.

" *Third.* That respondent has always been ready and willing to pay the $478, the balance of the money remaining in his hands after having made the payment he claims to have made under the terms of his letter, which the respondent claims is the correct

amount established by the judgment in the Municipal Court. That respondent was justified in demanding a release which was refused him."

In reference to respondent's first excuse or defense it is my impression that Gardner had no enforcible right to the money deposited unless Roth obtained and was undisturbed in the possession of the house.

As to the second excuse or defense respondent drew this letter himself, and it is for the court to determine why the respondent used the word " agent; " but whether he received it as agent or attorney it was in connection with the determination and pendency of certain legal questions of which Roth could not have had intimate knowledge.

Concerning the third defense or excuse, it has already, I think, been sufficiently discussed, except that I might add that the respondent's expressed desire to pay over this money might be gratified by paying it to the sheriff.

Upon all the evidence adduced, I find the respondent guilty of misconduct as charged in the petition.

It seems to us that the charges have been fully proved; that the respondent has converted to his own use the sum of $478 of the moneys received by him for the purpose of paying the rent, has been guilty of professional misconduct and that the opinion of the learned official referee should be approved. The respondent did not take the stand himself and it clearly appears that he is guilty of conversion.

It is our opinion that he should be disbarred, and it is so ordered.

DOWLING, MERRELL and McAVOY, JJ., concur.

Respondent disbarred.   Settle order on notice.